

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

PERGO, INC., et al. )
) CIVIL ACTION NO. 5:05-CV-50-FL(1)
Plaintiffs, )
) and
v. )
) CIVIL ACTION NO. 5:05-CV-306-FL(1)
FAUS GROUP, INC., et al. )
)
Defendants. )
)

**PERGO'S SUPPLEMENTAL BRIEF REGARDING THE
EFFECT OF THE REQUEST FOR REEXAMINATION OF THE '074 PATENT**

### I. Introduction

This Court can and should grant Pergo's Motion for a Preliminary Injunction and decline Faus' invitation to stay this case. Pergo's likelihood of success as to patent validity has in no way been diminished by the Patent and Trademark Office's ("PTO") unexceptional grant of Faus' *ex parte* reexamination request. Under 35 U.S.C. § 283, this Court is required, independent of any PTO proceeding, to assess the validity of the '074 patent in light of the evidence before it and make its own determination as to Pergo's likelihood of success on the merits. Faus' position that likelihood of success as to validity cannot be established when a reexamination is pending is simply not true and is not supported by the case law. Courts have in fact granted preliminary injunctive relief in the midst of patent reexamination proceedings. Contrary to Faus' assertion, this Court will not be creating precedent by enjoining Faus' infringement.[1]

---

[1] Pergo notes that the Court requested briefing solely on the issue of how much *weight* should be given to the grant of the of the request for reexamination of the '074 patent. As such, Faus' position that the Court should stay the entire action, as expressed at page 11 of its Supplemental Brief, is improper and untimely.

Faus' resort to the PTO reexamination process should be seen for what it is – a transparent attempt to delay resolution of the preliminary injunction motion and avoid the consequences of Faus' infringement of Pergo's patent. This Court is as well-equipped as any other body to render a decision on validity. In fact, statistics show that the asserted claims of the '074 patent are likely to be upheld by the PTO on reexamination. However, waiting nearly two years while the PTO's reexamination is pending will work even greater irreparable harm on Pergo. As Faus has not presented persuasive evidence that it will be able to seriously challenge the validity of the '074 patent, it is proper to grant Pergo preliminary injunctive relief.[2]

## II. Grant of a Request For Reexamination Does *Not* Equate to a Failure to Show Likelihood of Success on the Issue of Validity

Settled Federal Circuit law holds that the filing of a request and eventually even the grant of the request for reexamination does not establish a likelihood of patent invalidity. *See Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996). Thus, the Court is not required to, nor should it, defer to the mere grant of a request for reexamination – which is simply the beginning of what is typically a two year process – in deciding a preliminary injunction motion, particularly in this case where the Court has the benefit of reviewing a complete record on the invalidity evidence and arguments from all parties.

As Pergo presented during the September 23 hearing on the Preliminary Injunction Motion, when the PTO grants a request for reexamination, the grant of the reexamination request by the PTO does *not* affect the statutory presumption of validity, but simply serves as evidence

---

[2] As for Faus' contention that Pergo, Inc. does not have standing to enforce the '074 patent, Pergo refers the Court to the Federal Circuit's decision in *Vaupel Textmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875-876 (Fed. Cir. 1991) (holding the grant of a right to enforce patent-in-suit particularly dispositive as to whether plaintiff had standing).

2

which may go toward overcoming that presumption. *See Amoco Corp. v. Exxon Chemical Co.*, 7 U.S.P.Q.2d 1453, 1456-7 (N.D. Ga. 1987). In these circumstances, the grant of the reexamination request alone cannot serve as a basis for concluding that a movant has failed to show a likelihood of success on the issue of validity. *Id.* at 1457.

In at least two cases, preliminary injunctive relief has been granted despite the pendency of a PTO reexamination proceeding. In *International Rectifier Corp. v. Harris Corp.*, Case No. CV 90-4785-R (C.D. Cal. April 1, 1991), the court granted a preliminary injunction barring defendants from making, using or selling advanced technology power transistors covered by plaintiffs patent. See Kunin Decl., ¶¶38-40. The preliminary injunction was entered even though the PTO had already granted a request for reexamination of the patent. More recently, the Federal Circuit affirmed a trial court's grant of a preliminary injunction that barred plaintiffs from further infringement of defendants' patent. See *Hoop v. Hoop*, 279 F.3d 1004, 1008 (Fed. Cir. 2002). In Hoop, the district court acknowledged the ongoing reexamination but issued the injunction even though an office action on the reexamination had already issued. See March 6, 2001 Order at 2, fn. 1 (attached hereto as Exhibit 2). It is clear from these cases that this Court will not be breaking or creating precedent in granting Pergo preliminary injunctive relief.

Faus' brief attempts to create a different impression. In derogation of the Federal Circuit's pronouncement in *Hoechst*, Faus contends that the grant of a request for reexamination *alone* is grounds for finding no likelihood of success as to validity, citing the *Standard Havens* line of cases.[3] No such rule exists, and these cases are easily distinguishable on their facts. In

---

[3] *Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 996 F.2d 1236 (Fed. Cir. 1993) (unpublished) ("*Standard II*") and *Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 897 F.2d 511 (Fed. Cir. 1990) ("*Standard I*").

3

*Standard Havens II,* for example, the court granted a stay because, among other reasons, the reexamination proceeding had progressed to the point where the patent owner had lost before the Patent Office, had exhausted its administrative appeals, and the case was already on appeal to the district court. 996 F.2d 1236 (Fed. Cir. 1993) (citing 35 U.S.C. § 145, which authorizes appeals from adverse Patent Office decisions to the district courts of the United States); *see also* Declaration of Steven G. Kunin ("Kunin Decl.") (Exhibit 1 hereto) at ¶33-36. In *Standard Havens I* (which involved a Commissioner ordered reexamination, as opposed to a third party request for reexamination), the PTO already issued an Office Action rejecting the claims of the patent. Unlike Faus, the Federal Circuit found that the defendant in *Standard Havens I* had shown a substantial likelihood of success as to invalidity, as confirmed by the PTO's rejection of the asserted patent during reexamination. *See Standard Havens I*, 897 F.2d at 514. Neither of the *Standard Havens* cases were decided in the context of a motion for preliminary injunction.

Further, in *Standard Havens I*, the Federal Circuit reconfirmed that "reexamination proceedings and court actions involving challenges to validity are distinct and independent." 897 F.2d 511, 514 (Fed. Cir. 1990). The court even *rejected* the movant's argument that "the mere existence of conflicting views on validity as between a court and the Patent and Trademark Office" creates an important legal question regarding validity. *Id.* Unlike both *Standard Havens* cases, in granting the request for reexamination of the '074 patent, the PTO has not issued an office action rejecting any claim of the '074 patent,[4] and thus no important legal question

---

[4] In fact, the PTO found that the references cited by Faus against claim 8 *do not* raise a substantial new question of patentability. Kunin Decl., ¶29. Thus, *at least* claim 8 is likely to emerge from reexamination in its present form without any change.

4

regarding validity has been raised. Faus' reliance on *Standard Havens* is clearly misplaced.[5]

Faus' reliance on *Sawgrass Sys. v. Sumblimation Res., Inc.*, 1998 U.S. Dist. LEXIS 23546 (S.D. Cal. Dec. 23, 1998) is equally misplaced. In *Sawgrass*, a reexamination request had been filed before suit was even brought and the claims were already *rejected* prior to the preliminary injunction hearing. *Id.* at *3-4. Unlike the facts in *Sawgrass*, the request for reexamination in this case was filed the same day Faus filed its Opposition Papers to the Motion for Preliminary Injunction, the preliminary injunction motion in this case has been fully briefed and argued, and the order granting the reexamination request issued only days before the hearing on Pergo's motion.

Faus also cites *Tap Pharmaceuticals*,[6] but this case is also not on point, as it did not even involve a preliminary injunction motion. Moreover, in *Tap*, two (2) requests for reexamination had been granted before suit was filed. *Id.* at *5.

### III. Faus' Evidence of Invalidity is Specious

Faus has not raised a "substantial question concerning validity" of the '074 patent. *Purdue Pharma, L.P. v. Boehringer Ingleheim GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001) (citing *Genentech, Inc. v Novo Nordisk, A/S*, 103 F.3d 1361, 1364 (Fed. Cir. 1997)). Even assuming Faus had raised a substantial question regarding validity, Pergo presented countervailing evidence demonstrating that Faus' arguments supporting the request for reexamination "lack substantial merit." *Id.*

---

[5] At least one court has held that evidence relating to a reexamination proceeding, where a reexamination request filed by defendants had been granted, but no rejection had been made, should be prohibited from being introduced at trial. *Amphenol T&M Antennas, Inc. v. Centurion International, Inc.*, 69 U.S.P.Q.2d 1798 (N.D. Ill. 2002).

[6] *Tap Pharmaceutical Products, Inc. v. Tokida Chemical Indus., Ltd.*, 2004 U.S. Dist. LEXIS 3684 (N.D. Ill. Mar. 4, 2004).

5

Confronted with Pergo's evidence showing a likelihood of success on the merits, Faus announced during a telephone conference with the Court on June 10, 2005 that it intended to file a request for reexamination in the Patent Office to test the validity of the '074 patent. Even though more than 9 out of 10 requests for reexamination are granted, Faus found it necessary to doctor the prior art in its submission to the United States Patent and Trademark Office, especially as to the Kornfalt and Kelly references.

Kelly's purported disclosure was not prior art but was a different diagram drawn by counsel for Faus. Faus' arguments of unpatentability over Kelly were based on those redrawn drawings. *See* Plaintiffs' Tutorial Presentation, pgs. 59-62; Second Declaration of Eugene C. Rzucildo ("Rzucidlo Decl."), ¶9. Further, the drawings of Kornfalt were arbitrarily colored by an attorney for Faus in such a manner as to purportedly depict a tongue and groove joint, but in fact none of the original drawings or written description of Kornfalt provided such a disclosure. *See* Plaintiffs' Tutorial Presentation, pgs. 50-55; Rzucidlo Decl., ¶¶7-8. The last of the three documents, Sonderman, although having elements that could be analogized to the claims, did not have its elements connected and arranged in the manner required by the claims. *See* Plaintiffs' Tutorial Presentation, pgs. 56-58; Rzucidlo Decl., ¶10. The Kelly, Kornfalt and Sonderman documents also fail to teach the limitations of presently asserted claims 8 and 9. Faus attempted to combine other prior art with one or more of Kelly, Kornfalt or Sonderman to raise a substantial new question of patentability, but the PTO soundly rebuked these attempts. *See* Defendants' Hearing Presentation, fourth slide.

With knowledge of its own "copying" of the Pergo "Four-in-One" patented product, Faus then "manufactured" an incorrect drawing of the accused product, and had the drawings adopted

by its technical expert, Mr. Thomas Nentwig, in his declaration submitted with Faus' opposition to Pergo's preliminary injunction motion on June 24, 2005. However, in his deposition, Mr. Nentwig testified that he did not know who created the drawing, that he had only first seen the accused FasTrim product the day before his deposition, and that the drawing did not accurately represent the FasTrim product. *See* Nentwig Depo., pages 21-25. With such strong showings of infringement and validity, irreparable harm to Pergo should be presumed. *See HH Robertson v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987).[7]

When faced with the challenge to the "manufactured" drawings of Kelly at hearing, Faus shied away from its Kelly invalidity argument. The presumption of validity of claims 8 and 9 of the '074 patent also was not overcome. *See* fn.4, *supra*. Additionally, Pergo pointed out during the hearing that even if the arbitrary coloration of the Kornfalt drawings depicted a "tongue and groove" joint as argued by Faus in the request for reexamination, the orientation of such coloration still failed to satisfy at least one of the claim's limitations, *i.e.*, "a groove is in the form of a large base distal the undersurface of a respective member" as required by claims 6, 8 and 10. With regard to the Sonderman reference, no argument was made by Faus that Sonderman could even have its "foot" engage a "securing member" (as required by the '074 patent claims 9 and 12) on account of the interpositioning of a supposed "attachment" between the "foot" and "securing member." Rzucidlo Decl., ¶¶7-10; Plaintiffs' Reply Memorandum, pp. 5-7. Finally,

---

[7] Presumptions of irreparable harm have been found in similar circumstances in numerous other cases. *See, Canon Comp. Sys, Inc. v. Nu-Kote Int'l*, 134 F.3d 1085, 1090 (Fed.Cir. 1998); *PPG Indus, Inc. v. Gaurdian Indus., Corp.*, 75 F.3d 1558, 1566 (Fed. Cir. 1996); *Southwest Aerospace Corp. v. Teledyne Indus., Inc.*, 702 F.Supp. 870, 886 (N.D. Ala. 1988) ("given this finding and determination that the '368 Patent is valid and infringed by Teledyne and that a finding of probable future infringement by Teledyne is justified, a presumption of irreparable harm to Southwest is proper.")

7

no argument was made that any "attachment" of Sonderman, Kelly or Kornfalt was a "stair nose" as required by either of claims 8 and 9 of the '074 patent.

When the reexamination order issued, the PTO did not have the full benefit of Pergo's disclosure to this Court of the full extent to which the "prior art" submitted by Faus was either manufactured, invented, misconstrued or misrepresented. The Order granting reexamination was issued without input by Pergo. As the Court is only forum to which Pergo has had the opportunity to point out the deficiencies, the Court is in fact in the better position to determine the sufficiency of Faus' validity defense.

### IV. The Reexamination Process

Faus asserts that "the pending reexamination [of the '074 patent] raises substantial questions of validity of Pergo's patent, creates ambiguity about the claims, and claim elements at issue before the Court, and will likely create intervening rights in Faus' favor that provide an equitable defense to the charge of infringement." *See* Supplemental Brief, page 2. Faus' statements simply are untrue.

Steven G. Kunin, the former Deputy Commissioner for Patent Examination Policy in the Office of the Commissioner for Patents in the United States Patent and Trademark Office "wrote the book" on the policies, practices and procedures to be used during reexamination proceedings conducted in the PTO. The Kunin Declaration explains what can and cannot be accomplished during a reexamination proceeding, describes the reexamination process, and attaches statistical data prepared by the PTO. *See* Kunin Decl., ¶¶7-28 and Ex. C and D attached thereto.

As shown by Mr. Kunin's declaration, Faus' view of reexamination is clearly at odds with that of the PTO. In particular, and among other things:

8

> "It is <u>not necessary</u> that a *prima facie* case of unpatentability exist as to the claims in order for a substantial new question of patentability to exist as to the claim" (Kunin Declaration, paragraph 9.D) (emphasis added).
>
> "Thus, a substantial new question of patentability as to a patent claim could be present even if the Examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications" citing MPEP §2240 (Exhibit F to the Kunin Decl.), *Id.*

Further, as noted by Mr. Kunin, supposed questions as to "ambiguity of the claims and claim elements" are not addressed in a reexamination proceeding which is "limited to issues of lack of novelty and obviousness . . . ." Kunin Decl., ¶12.A. Moreover, Faus' view that Pergo can only narrow, not broaden, its claim scope, ignores that the reexamination proceeding can be suspended merely by Pergo's filing of a "broadened reissue" of the '074 patent, thereby preventing an initial Office Action in the reexamination from even being issued. This would permit Pergo the opportunity to seek even broader claims than currently exist in the '074 patent. Kunin Decl., ¶4, fn. 3. Faus' analysis of the reexamination process overlooks or simply ignores these realities.

Faus took its best shot and came up short in attacking the validity of the '074 patent. In requesting reexamination, the best Faus could do was find a different forum with a lower standard of proof to litigate the validity of the patent.[8] Given that more than 90% of all third party *ex parte* requests for reexamination are granted, the fact that the PTO has granted a request to reexamine the '074 patent is insignificant. *See* Kunin Decl., ¶ 9.E. According to the PTO's statistics, it will likely be almost two years before the PTO renders a decision as to the validity

---

[8] Faus recognizes that the presumption of validity applicable in the present action does not apply in reexamination proceedings (Faus' Supplemental Brief, page 6).

9

and scope of the '074 patent. This is too long to wait to enjoin Faus' infringement and would defeat the goal of preliminary injunctive relief.

## V. There Are No Potential Intervening Rights

Faus' assumptions that Pergo will narrow its claims by Amendment (Faus' Suppl. Brief, pages 8-9) are too speculative to be taken seriously. As Mr. Kunin notes, a patent owner's reply to the Examiner's initial Office Action may include any combination of reasons setting forth why it disagrees with the Examiner's patentability determination, including the submission of affidavit or other evidence. See Kunin Decl., ¶13.B. Although claim amendments or submissions of new claims are an option, they are not required. It is pure speculation, and a waste of this Court's time, to argue what Pergo might do in response to an initial Office Action, when no such action has issued. See Kunin Decl., ¶9.D.

## VI. A Stay of the Preliminary Injunction Is Not Appropriate

Faus cites *Emhart Industries, Inc. v. Sankyo Keiki Mfg.*, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill 1987) in support of its request for a stay. *Emhart* was not a preliminary injunction case. In fact, the court specifically noted that plaintiff had *never sought* preliminary injunctive relief. *Id.* at 1891 (emphasis added).

Faus' reliance on *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404 (W.D.N.Y. 1999) also does not support Faus' suggestion for a stay.[9] In *Xerox*, the court found that defendants' filing of a request for reexamination during pendency of the suit was a dilatory tactic and denied the stay. More importantly, the court noted that if the district court determines that the patent is not

---

[9] Since 90% of patents undergoing reexamination emerge without being cancelled (*see* Kunin Decl., Exhibit G, ¶9), and since the reexamination order found no substantial new question of patentability as to claim 8, reciting a stair nose feature (*see* Kunin Decl., ¶29), there is a *very* strong likelihood that *at least* claim 8 will survive.

10

invalid, the PTO will continue its reexamination because the two forums have different standards of proof for determining invalidity, such that the doctrine of collateral estoppel would not bar the PTO's reexamination, citing *Ethicon, Inc. v. Quiqq*, 849 F.2d 1422, 1429 (Fed. Cir. 1988). If the PTO ultimately issues a final determination that would cause modification or withdrawal of the preliminary injunction, Faus would have benefit of the bond. Pergo's damages expert, Mark Peterson, calculated that maximum annual damages to Faus would be relatively insignificant. *See* July 23, 2005 Declaration of Mark Peterson, ¶5.

### VII. Conclusion

For the foregoing reasons, Pergo requests that the Court grant its Motion for Preliminary Injunction and deny Faus' request to stay.

Respectfully submitted,

Hayden J. Silver, III
N.C. State Bar No. 10037
W. Swain Wood
N.C. State Bar No. 32037
KILPATRICK STOCKTON LLP
3727 Glenwood Avenue
Suite 400
Raleigh, North Carolina 27607
Telephone: 919/420-1700
Facsimile: 919/420-1800

11

_(signature)_
OF COUNSEL
STEVENS, DAVIS, MILLER & MOSHER, L.L.P.
Thomas P. Pavelko
Eric P. Robins
1615 L Street, N.W., Suite 850
Washington, D.C. 20036
Telephone: 202/785-0100
Facsimile: 202/785-0200

Attorneys for Plaintiffs

12

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day a copy of the foregoing **PERGO'S SUPPLEMENTAL BRIEF REGARDING THE EFFECT OF THE REQUEST FOR REEXAMINATION OF THE '074 PATENT** has been served on counsel for defendants by electronic mail, facsimile, and UPS overnight delivery on:

> James J. Thomas, II (jthomas@mckennalong.com)
> McKenna, Long & Aldridge LLP
> 303 Peachtree Street, N.E., Suite 5300
> Atlanta, GA 30308
> Telephone: (404) 527-4000
> Facsimile: (404) 527-4198

and by electronic mail, facsimile and hand delivery on:

> Lee Whitman (lwhitman@wyrick.com)
> Wyrick, Robbins, Yates & Ponton LLP
> 4101 Lake Boone Trail, Suite 300
> Raleigh, NC 27607
> Telephone: (919) 781-4000
> Facsimile: (919) 781-4865

This the 14th day of October 2005.

_____

KILPATRICK STOCKTON LLP
3727 Glenwood Avenue
Suite 400
Raleigh, North Carolina 27607
Telephone: 919-420-1700
Facsimile: 919-420-1800

RALLIB01 781277.1